UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM MORRIS,

                Petitioner,

        V.

GEORGE DUNCAN,

              Respondent.

_____

**REPORT AND
RECOMMENDATION**

03-CV-1428
(TJM/VEB)

## I. INTRODUCTION

Petitioner William Morris, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  In July of 2000, Petitioner was convicted in a New York State court of Criminal Sale of a Controlled Substance in the Third Degree and was sentenced to a term of imprisonment.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

### A.    Facts

The following factual summary is derived from the state court records.  In the early morning hours of April 23, 1999,  Petitioner was observed on a street corner in Albany, New York, selling  what appeared to be a controlled substance to Clarence Delaney ("Delaney").

(R at 248-249, 258, 261-265)[1].   Petitioner was observed and identified by Albany Police Officer, Stephen Dorn ("Officer Dorn").  Officer Dorn testified that he recognized Petitioner from prior street encounters and arrests.  (R at 248-249).  Officer Dorn reported the information to other police officers on duty and the other officers apprehended and arrested Delaney.  (R at 266, 285, 310).  A substance recovered from Delaney was later tested and determined to be cocaine.  (R at 250-251).

On May 9, 1999, Petitioner was arrested for the alleged sale of a controlled substance. (R at 337).  On November 5, 1999, an Albany County Grand Jury returned Indictment Number D-99-1670, charging Petitioner with one count of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law ("NYPL") §220.39(1)[2].  (R at 2).

## B.    State Trial Court Proceedings

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's trial proceedings.  The trial began on July 5, 2000.  Petitioner was represented by assigned counsel, Theresa M. Suozzi, Esq.  The defense theory was that Petitioner did not sell the drugs to Delaney on April 23, 1999, and that Officer Dorn was mistaken in his identification.   On July 10, 2000, the jury found Petitioner guilty of Criminal Sale of a Controlled Substance in the Third Degree.

On August 8, 2000, Petitioner, by and through Attorney Suozzi, moved to set aside

---

[1]References preceded by "R" refer to the record on appeal.

[2]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

his verdict pursuant to CPL § 330.30, citing several alleged errors.   On August 21, 2000, prior to sentencing Petitioner, Judge Breslin denied Petitioner's CPL § 330.30 motion.  (S at 1-12)[3].  Petitioner was then sentenced to a term of three to nine years in prison.  (S at 12).

## C.      State Appellate Proceedings

On May 10, 2001, Petitioner, through Attorney Suozzi, filed a motion pursuant to CPL § 440.10 to vacate his conviction based upon alleged newly discovered evidence.  (SR at 1)[4].  On October 5, 2001, Judge Breslin denied the motion in a written Decision and Order.  (SR at 14).

Petitioner then appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted two claims in support of the appeal: (1) that the trial court's denial of the § 330 motion was an abuse of discretion and (2) that the conviction should have been reversed by the trial court based upon alleged newly discovered evidence.

In a decision issued on November 14, 2002, the Appellate Division affirmed Petitioner's conviction and sentence.  People v. Morris, 751 N.Y.S.2d 56 (3rd Dep't 2002). Petitioner's application for leave to appeal to the Court of Appeals was denied on January 31, 2003.  People v. Morris, 99 N.Y.2d 583 (2003).

---

[3]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

[4]References preceded by "SR" are to the pages of the Supplemental Record provided to this Court.

**D.   Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on December 1, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Thereafter, Respondent filed a Response in Opposition.  (Docket No. 10).  Petitioner filed a Traverse in further support of his Petition.  (Docket No. 13)  On September 15, 2004, Petitioner submitted a supplemental Traverse claiming relief based upon additional newly discovered evidence.  (Docket No. 15).

For the reasons that follow, the Court recommends that the Petition be DENIED.

## III. DISCUSSION

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits

of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Impact of Petitioner's Conditional Release**

As a threshold matter, this Court notes that Petitioner was conditionally released to parole on or before July 12, 2007. However, for the reasons set forth below, Petitioner's release does not necessarily render his Petition moot.

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *'in custody* in violation of the Constitution or laws or treaties of the United States.' " Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (quoting 28 U.S.C. § 2241(c)(3) (emphasis in original) and citing 28 U.S.C. § 2254(a)).

The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng, 490 U.S. at 490-91 (citing Carafas v. LaVallee, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)). In the present case, Petitioner filed his federal habeas petition on December 1, 2003, while he was in custody pursuant to his July 2000

6

conviction. Thus, because Petitioner was incarcerated at the time he filed his habeas petition, he fulfills the "in custody" requirement of 28 U.S.C. § 2241.

Although the custody requirement is satisfied, this Court's inquiry does not end there. If the Petitioner does not satisfy the "case-or-controversy" requirement of Article III, Section 2 of the Constitution, it is moot and the Court may not consider it. See Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

To satisfy the "case or controversy" requirement, the petitioner must, at all stages of the litigation, have suffered, or be threatened with, an actual injury which is likely to be redressed by a favorable judicial decision. See id.  For a petitioner who is no longer in custody, that means a demonstration of a "concrete and continuing injury" that is a "collateral consequence" of the alleged constitutional violation and can be remedied by granting the writ. Id. (citing Carafas, 391 U.S. at 237-38).

Where, as in this case, the petitioner challenges the criminal conviction itself, the Supreme Court has been willing to presume that a wrongful conviction has continuing collateral consequences, or to "to count collateral consequences that are remote and unlikely to occur." Spencer, 523 U.S. at 8; accord United States v. Probber, 170 F.3d 345, 348 (2d Cir.1999).

This presumption of collateral consequences has been justified upon the notion that "most criminal convictions do in fact entail adverse collateral legal consequences," Sibron v. New York, 392 U.S. 40, 55 (1968), in that convicted criminals often face certain "civil disabilities" as a result of their conviction, Lane v. Williams, 455 U.S. 624, 632 n. 13, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982).  Examples of such disabilities include being "barred from holding certain offices, voting in state elections, and serving as a juror." Lane, 455

U.S. at 632.

In light of the foregoing presumption of collateral consequences, this Court finds that the "case or controversy" requirement has been satisfied and will address the merits of Petitioner's claims.

## C.    Petitioner's Claims

Petitioner asserts three grounds in his Petition.  However, as set forth below, the first ground contains five separate claims.  Each claim will be addressed in turn.[5]

### 1.    Ground One – Denial of CPL § 330 Motion

In a post-trial motion filed pursuant to § 330 of the New York Criminal Procedure Law, Petitioner argued that Petitioner raised five claims: (a) that he was denied Brady[6] material and other discovery materials that he requested, (b) that references made to his pretrial incarceration and prior arrest were in violation of the Sandoval[7] compromise, (c) that the evidence at trial was legally insufficient, (d) that there was juror bias and misconduct not disclosed until after trial, and (e) that newly discovered evidence would

---

[5]Petitioner raises an additional claim based upon alleged newly discovered evidence in a document entitled "Addendum of Petitioner Response to District Attorney's Opposition Brief" (Docket No. 15).  This Court declines to consider a claim improperly raised for the first time in a responsive pleading.  See Parker v. Duncan, 03-CV-0759, 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007) ("Claims, therefore, that are raised for the first time in such a pleading are not properly considered by the court.").  Moreover, it does not appear that the additional claim was ever presented to the state court, as required prior to seeking habeas review, or that the evidence in question would constitute "newly discovered evidence."

[6]Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[7]A "compromise" reached between the parties in any given criminal trial pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), determines the extent to which a defendant may be cross-examined regarding prior crimes and bad acts bearing on his credibility, veracity, or honesty.

8

have likely affected the outcome of the trial.  (R at 106)[8].

In support of his Petition, Petitioner argues that the trial court's denial of the § 330 motion was "an abuse of discretion" and violation of his due process rights.  Respondent contends that Petitioner's claims in this regard are not cognizable on habeas corpus review and, in any event, are without merit.  Due to the fact that Petitioner is proceeding *pro se*, this Court will construe his Petition as seeking habeas relief based upon all of the grounds originally set forth in the § 330 motion.

### a.   *Brady* Material (*Claim One*) (330 Motion Claim)

Under Brady v. Maryland, the prosecutor is obligated to disclose material evidence that is favorable to the accused. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).  The Supreme Court has held that "there are three components of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Id.; see also Boyette v. Lefevre, 246 F.3d 76, 89 (2d Cir.2001).

In the present case, Petitioner argues that the prosecution withheld exculpatory evidence.  As noted above, Petitioner was convicted of selling cocaine to Delaney.  Almost immediately after the sale, Delaney was arrested while traveling in a car.  (R at 266, 285, 310).  Petitioner's trial counsel submitted discovery demands to the prosecution, requesting, *inter alia*, the names and addresses of the other occupants of the vehicle at the time of Delaney's arrest; the make and model of the vehicle; and the location of each

---

[8]References preceded by "R" are to the pages of the Record on Appeal provided to this Court.

occupant of the vehicle relative to Delaney.   The prosecution never provided this information.  Petitioner contends that this failure constituted a violation of his <u>Brady</u> rights.

The Appellate Division, Third Department held that the trial court had not abused its discretion in finding that there had been no <u>Brady</u> violation.  <u>Morris</u>, 751 N.Y.S.2d at 57. In this regard, the Appellate Division noted that there was no evidence that the information demanded by Petitioner "was either recorded or remembered by the police." <u>Id.</u>  The court further found that "the record indicate[d] that the police focused solely on Delaney as the one person who matched the description of the buyer." <u>Id.</u>

This Court finds that the Appellate Division's decision in this regard did not involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under <u>Brady</u>, "[t]o the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." <u>United v. Avellino</u>, 136 F.3d 249, 255 (2d Cir.1998). However, "the prosecution is not required to disclose evidence it does not possess or of which it is not aware." <u>Sturdivant v. Barkley</u>, No. 04-CV-5659, 2007 WL 2126093, at *6 (E.D.N.Y. July 24, 2007) (citing <u>Smith v. Edwards</u>, No. 98 Civ. 7962, 2000 WL 709005, at *6 (S.D.N.Y. May 31, 2000)).

In the present case, the record supports the Appellate Division's conclusion that the prosecution did not have the information demanded by Petitioner and, thus, cannot be considered to have "suppressed" that information under <u>Brady</u>.

Officer Scott Snide testified on cross-examination that the other occupants of the car

were not arrested and that he did not "get their names." (R at 318).  Officer Michael Seney stated that he did not remember asking the occupants for their names or identification.  (R at 397).  Officer Seney also testified that although the other occupants were questioned by the police, he took no notes of the interviews and did not observe any other officers taking notes.  (R at 399-400).

In addition, the Appellate Division's factual finding as to this matter is also supported by the following exchange, which took place between the trial court and Petitioner's counsel:

> THE COURT: Okay.  Now, a couple of things, just so the record is clear.  You're not saying the DA ever had the names of those . . . two individuals in the car – are you?
>
> MS. SUOZZI: No.

(R at 150).  Petitioner's trial counsel also acknowledged that she had no "allegations or proof" that the prosecution had possession of the information at issue (R at 151).

It is well settled that "the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." Mallet v. Miller, 432 F. Supp.2d 366, 377 (S.D.N.Y. 2006) (citing Strickler v. Greene, 527 U.S. 263, 286, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); United States v. Avellino, 136 F.3d 249, 261 (2d Cir.1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that ... the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary.")).  As such, Petitioner's speculation that the prosecution withheld the information that he sought is insufficient to

11

warrant habeas relief.

Accordingly, this Court finds that Petitioner is not entitled to habeas relief based upon the alleged <u>Brady</u> violation.

      **b.**    ***Sandoval* Compromise *(Claim Two)***

In the Second Circuit, "the admission of a prior conviction to impeach a defendant is an evidentiary ruling and is only redressable in a federal habeas corpus petition if petitioner can show that the particular errors were of constitutional magnitude." <u>Whittman v. Sabourin</u>, No. 00 Civ. 2867, 2001 WL 687369, at *5 (S.D.N.Y. June 18, 2001).  Any evidentiary error must be "so pervasive as to have denied [petitioner] a fundamentally fair trial." <u>Collins v. Scully</u>, 755 F.2d 16, 18 (2d Cir.1985).

When addressing a <u>Sandoval</u> issue, the trial court must balance the probative value of a prior conviction against the prejudicial effect.  <u>See</u> <u>Sandoval</u>, 34 N .Y.2d at 376-77.  A trial court's ruling in this regard is afforded broad discretion with respect to the weighing of the probative value against the prejudicial effect.  <u>See</u> <u>Simmons v. Ross</u>, 965 F. Supp. 473, 480 (S.D.N.Y. 1997).

In the present case, the trial court's <u>Sandoval</u> ruling was that, if Petitioner testified, the prosecution could not inquire as to two prior convictions for marijuana possession.  (R at 174-175).  However, the trial court ruled that he would permit "full inquiry" regarding a conviction for false impersonation, on the grounds that said conviction was relevant as to Petitioner's credibility. (R at 175).  With respect to a weapons possession conviction, the trial court imposed "a *Sandoval* compromise" and indicated that he would limit questioning to the level of the arrest, conviction, and sentencing. (R at 175).

Petitioner argues that the prosecutor violated the trial court's <u>Sandoval</u> compromise

12

by suggesting during cross-examination that Petitioner was "living in jail."   Further,

Petitioner contends that the prosecution improperly offered evidence of a prior arrest by

Officer Dorn.  According to Petitioner, the reference to this uncharged crime was contrary

to the trial court's <u>Sandoval</u> ruling and was highly prejudicial.

      With respect to this claim, the Appellate Division found that the record did not

"provide support for defendant's contentions that the People failed to abide by County

Court's <u>Sandoval</u> ruling or that the prosecutor described him as 'living in jail.'" <u>Morris</u>, 751

N.Y.S.2d at 57.  In addition, regarding Officer Dorn's testimony as to having previously

arrested Petitioner, the Appellate Division held as follows:

> [A]lthough Dorn referred more than once to having previously arrested defendant
> in 1998, this testimony was admitted to explain the basis for Dorn's ability to
> recognize defendant in direct response to defense counsel's remarks questioning
> that ability in her opening statement. In addition, County Court, sua sponte, gave an
> appropriate instruction to limit the jury's consideration to the issue of Dorn's ability
> to readily recognize defendant.

<u>Id.</u>

      This Court finds that the Appellate Division's decision as to this claim did not involve

an unreasonable application of clearly established Federal law; nor was it based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding.

      First, Petitioner's argument that the prosecutor suggested that he was "living in jail"

is not supported by the evidentiary record.  During cross-examination, the prosecutor asked

Petitioner the following question: "And you're currently incarcerated for that, correct?  Are

you currently in jail for that charge?" (R at 552).  Petitioner responded in the affirmative.

It appears that the prosecutor was referring to the sentence that Petitioner received as a

result of his weapons possession conviction.  Under the trial court's <u>Sandoval</u> ruling, a question regarding the sentence was permissible.  In any event, even if the prosecutor's statement was arguably inappropriate, any prejudice resulting from this single question would not have been sufficient to rise to the level of a constitutional violation.

Second, with respect to the testimony regarding the fact that Officer Dorn had previously arrested Petitioner, such evidence was admissible as to the issue of identity. Petitioner's defense theory was that Dorn was mistaken in his identification of Petitioner. Evidence of prior uncharged crimes is admissible as to the question of identity under both New York and federal law.  <u>See</u> <u>People v. Molineux</u>, 168 N.Y. 264, 293 (1901); <u>Fed R. Evid.</u> 404 (b).   Thus, this Court finds that the Appellate Division's determination with respect to this issue was not unreasonable.  <u>See</u> <u>Alexander v. Walker</u>, No. 03 Civ. 8440, 2004 WL 1857575, at *5 (S.D.N.Y. Aug 19, 2004).

Lastly, any arguable prejudice that might have been created as a result of the foregoing evidence was adequately addressed by a limiting instruction given by the trial court, which specifically advised the jury that they were only to consider the prior arrest in connection with the identity issue. (R at 259).  The Supreme Court has emphasized that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions."  <u>Zafiro v. United States</u>, 506 U.S. 534, 540-41 (1993) (internal quotation marks omitted); <u>see also</u> <u>United States v. Downing</u>, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

For the foregoing reasons, this Court finds that Petitioner is not entitled to habeas relief based upon an alleged violation of the trial court's <u>Sandoval</u> compromise.

14

c.    **Sufficiency of the Evidence** *(Claim Three)*

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

Petitioner attacks the sufficiency of the evidence supporting his conviction. Specifically, Petitioner notes that Officer Dorn's testimony was the only evidence offered regarding the identity of the person who sold the cocaine to Delaney.  In addition, Delaney himself testified that Petitioner was not the person who sold him the drugs.

The Appellate Division concluded that the evidence was sufficient, stating that after viewing the evidence in a light favorable to the People . . ., there exists a 'valid line of

15

reasoning and permissible inferences' from which a rational jury could conclude that defendant engaged in the crime charged." Morris, 751 N.Y.S. 2d at 57.

This Court finds that the Appellate Division's decision with respect to this issue did not involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Officer Dorn testified that on the night in question, he was located approximately fifty feet from the intersection of Clinton Avenue and Henry Johnson Boulevard in Albany, observing the area using a pair of binoculars. (R at 255-256). According to Officer Dorn, the area was "well lit." (R at 256). Dorn testified that Petitioner arrived at the scene at approximately 4:20 in the morning. (R at 257-258). Dorn could identify Petitioner because he had "arrested him before and . . . had different street encounters with him." (R at 258). Dorn testified that he observed an individual, later identified as Delaney, approach Petitioner. (R at 262). According to Dorn, Petitioner removed several white objects from his mouth and transferred them to Delaney. (R at 263-264). In return, Delaney gave Petitioner money. (R at 264).

There was no dispute in the case that Delaney was arrested shortly thereafter, that he was in possession of a white substance, and that the substance was later determined to be cocaine. (R at 236-237). The only issue was the identity of the person who sold the cocaine to Delaney. Based upon the testimony of Officer Dorn, a rational juror could certainly conclude that Petitioner was the individual in question. This Court may not "disturb the jury's findings with respect to the witnesses' credibility." United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989); see also Maldonado v. Scully, 86 F.3d 32, 35 (2d

Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues").

Accordingly, this Court finds that Petitioner's claim regarding the sufficiency of the evidence should be denied.

### d.    Juror Bias *(Claim Four)*

The Second Circuit has held that "[j]ury bias can be established only if a habeas petitioner demonstrates that 'prejudice [wa]s 'manifest.'" Knapp v. Leonardo, 46 F.3d 170, 176 (2d Cir. 1995) (quoting Irvin v. Dowd, 366 U.S. 717, 724, 81 S. Ct. 1639, 1643 (1961)). In other words, "the petitioner must show the 'actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" Id. (quoting Irvin, 366 U.S. at 723, 81 S.Ct. at 1643).

Petitioner alleges that one of the jurors may have harbored a bias against him.  In support of this argument, Petitioner offers the affidavit of Stacey Harper. (R at 112-114). Ms. Harper, who described herself as a "personal friend" of Petitioner and his family, stated that throughout the trial, Juror #2, glanced at her and gave her "strange, almost 'dirty' or nasty looks." (R at 112).  After the trial, Ms. Harper learned that Juror #2 was Pamela Salamida.  (R at 112).  According to Harper, Salamida was going through a bitter divorce with Harper's uncle.  (R at 113).  Harper attempted to contact Ms. Salamida to discuss the verdict, but Salamida refused to speak with Harper.  (R at 113).  Based upon the foregoing, Harper concluded that Salamida "was unable to remain impartial on {*sic}* this case due to her dislike and resentment of me and my family." (R at 113).

The Appellate Division did not discuss this claim in its decision, but did state that

17

Petitioner's "remaining contentions [had] been reviewed and found to be equally without merit." Morris, 751 N.Y.S. 2d at 57.   The Second Circuit has held that a one-word denial of a petitioner's claim constitutes an "adjudication on the merits" for purposes of AEDPA. Sellan v. Kuhlman, 261 F.3d 303, 312-13 (2d Cir.2001). Where, as here, the state court fails to articulate a coherent rationale for its rejection of a petitioner's claim, but that rejection nevertheless is clearly on the merits, the federal court must " 'focus its review on whether the state court's ultimate decision was an "unreasonable application" of clearly established Supreme Court precedent.' " Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir.2001).

In the present case, this Court finds that the Appellate Division's ultimate decision concerning Petitioner's claim of juror bias was not an unreasonable application of clearly established Supreme Court precedent.   The Supreme Court has said that a habeas petitioner must demonstrate that the prejudice was "manifest." Irvin, 366 U.S. at 723, 81 S.Ct. at 1643).  In addition, pursuant to 28 U.S.C. § 2254(e)(1), "the state court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial, rebuttable by clear and convincing evidence." Torres v. Woods, 04 CV 5560, 2005 WL 1541047, at *6 (E.D.N.Y. June 20, 2005) (citing Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 813 (2d Cir.2000)). "[T]he trial court's findings of impartiality [may] be overturned only for "'manifest error.'" Fama, 235 F.3d at 813 (quoting Patton v. Yount, 467 U.S. 1025, 1031, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

Harper's affidavit merely establishes that Salamida gave her "strange . . . looks," that were "*almost* dirty." (R at 112) (emphasis added).  Moreover, Harper alleges that Salamida was biased against *Harper* and her family, not necessarily Petitioner.  There is no evidence in the record to support the claim that Salamida's alleged animus toward Harper was so

18

great that she was unable to be fair and impartial to Petitioner, who was not even related to Harper.   Indeed, there is no credible evidence that Salamida even knew of the relationship between Salamida and Petitioner's family.   Although Harper suggests that Salamida observed her sitting next to Petitioner's mother, there is no evidence concerning any communications between Harper and Petitioner in the presence of Salamida that might have led Salamida to conclude that Harper and Petitioner were friends.

This Court concludes that this speculation offered by Petitioner and Ms. Harper does not constitute clear and convincing evidence sufficient to overcome the presumption of correctness afforded to the state court's finding of impartiality.   Accordingly, Petitioner is not entitled to habeas relief based upon alleged juror bias.

      **e.**      **Newly Discovered Evidence *(Claim Five)***

Petitioner raises two claims based upon alleged newly discovered evidence.   The first of those claims, which was initially raised in Petitioner's CPL §330.30 motion, is discussed here.   The second newly discovered evidence claim is discussed below in Section III.C.2.

The Supreme Court has explained that "newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963).   To warrant relief the newly discovered evidence "must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Id.   "Also, the district judge is under no obligation to grant a hearing upon a frivolous or incredible allegation of newly discovered evidence." Id.

"This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution– not to correct errors of fact." Herrera v. Collins, 506 U.S. at 400, 113 S.Ct. 853 (citing cases).  As such, a claim "based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Id.

After the conclusion of the trial, Petitioner's trial counsel submitted a Freedom of Information Law ("FOIL") request to the Albany City Clerk Records Access officer.  (R at 115).  As a result of that request, Petitioner obtained a December 1999 arrest report related to Delaney and two receipts for property taken from Delaney's person in May of 1999. Although one of the property receipts had been previously provided to Petitioner's trial counsel, the other had not.  Petitioner contends that certain clerical errors contained on these items demonstrated "sloppy police work," which, if they had been made known to the jury, would have created a reasonable doubt as to Petitioner's guilt.

The Appellate Division did not discuss this particular claim of newly discovered evidence in its decision, but did state that Petitioner's "remaining contentions [had] been reviewed and found to be equally without merit."  Morris, 751 N.Y.S. 2d at 57.   As noted above, a one-word denial of a petitioner's claim constitutes an "adjudication on the merits" for purposes of AEDPA.  Sellan, 261 F.3d at 312-13.

The Appellate Division's decision in this regard did not involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The alleged newly discovered evidence related to collateral matters and Petitioner has

failed to demonstrate that the introduction of the evidence would likely have changed the jury's verdict. Moreover, Petitioner has not established how the newly discovered evidence bears upon the constitutionality of his conviction, as required to obtain habeas relief. See White v. Keane, 51 F. Supp.2d 495, 502 (S.D.N.Y.,1999) ("The law is clear that 'the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.'") (quoting Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

Lastly, it is not clear that the evidence in question was actually "newly discovered evidence," in that Petitioner's trial counsel presumably could have obtained the evidence prior to trial by making the same FOIL request she made after the trial. See Shuler v. Spitzer, No. 05-CV-0932, 2007 WL 1704644, at *6 (E.D.N.Y. June 13, 2007) ("Newly discovered evidence is, by definition, incapable of discovery through counsel's due diligence before or during trial. Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered.") (citing United States v. Middlemiss, 217 F.3d 112, 122 (2d. Cir 2000) ("Relevant factors to a successful motion [based on newly discovered evidence] are whether ... counsel could not have discovered the evidence with due diligence before or during trial.").

For the foregoing reasons, this Court finds that Petitioner is not entitled to habeas relief based upon this claim of newly discovered evidence.

## 2.    Ground Two - Newly Discovered Evidence

Petitioner's second newly discovered evidence claim was first raised in his CPL § 440.10 motion. In support of that motion, Petitioner submitted an affidavit from Delaney,

which allegedly contained newly discovered evidence.  At trial, Delaney testified that he could not remember the names of the other occupants of the vehicle on the night in question.  (R at 363).  However, after the trial concluded, Delaney remembered that the occupants' street names were "Slim" and "Black."  Delaney also claimed that the police knew the true identities of the occupants.

The trial court denied the § 440.10 motion, concluding that Delaney's affidavit did not constitute newly discovered evidence because "defense counsel or an investigator could have interviewed [Delaney]" prior to trial.  (SR at 0014).  Affirming the trial court, the Appellate Division held "County Court correctly concluded that [Delaney's] affidavit was not newly discovered evidence for there is no indication that, with due diligence, this information could not have been produced at trial." Morris, 751 N.Y.S.2d at 57.  In addition, the Appellate Division noted that the information contained in the affidavit was not "of such character that, with it, the jury probably would have rendered a verdict favorable to defendant." Id.

The Appellate Division's decision in this regard did not involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The state courts' conclusion that the Delaney affidavit did not qualify as newly discovered evidence was reasonable.  Petitioner failed to establish that the information contained therein could not have been discovered prior to or during trial through the exercise of due diligence. See Martinez v. O'Connell, 06-CV-0887, 2007 WL 189335, at *2 (Jan. 22, 2007) ("A petitioner whose claim is based upon newly discovered evidence has the burden of showing that such evidence could not have been discovered earlier with due diligence.");

Shuler, 2007 WL 1704644, at *6; see also Clark v. Irvin. 844 F. Supp. 899, 907 (N.D.N.Y. 1994); Friedgood v. Keane, 51 F. Supp.2d 327, 337 (E.D.N.Y. 1999).

  In any event, Delaney testified at trial that he could not recall the names of the other occupants of the vehicle. (R at 363).  To the extent that his affidavit might arguably be considered a recantation of his trial testimony, Petitioner failed to provide any "proof of the reliability of any such recantation," which is a minimum requirement to obtain habeas relief based upon recanted testimony. Simmons v. Fisher, 02 Civ. 4811, 2006 WL 2129770, at *15 (S.D.N.Y. July 26, 2006); see also Hamilton v. Herbert, 01 CV 1703, 2004 WL 86413, at *17 (E.D.N.Y. Jan. 16, 2004) (finding witness's recantation to be "lacking credibility and insufficient proof that the prosecution was in possession of this exculpatory evidence"); Gonzalez v. Superintendent, Sullivan Correctional Facility. 761 F. Supp. 973, 983 (E.D.N.Y. 1991) (holding that petitioner was not entitled to relief because recantation was not credible).

  Accordingly, this Court finds that Petitioner is not entitled to habeas relief based upon this alleged newly discovered evidence.


  **3.  Ground Three – *Brady* Material (Stand Alone Claim)**

  The third ground raised in the Petition is based upon the prosecution's alleged failure to turn over Brady material.  Specifically, Petitioner alleges the prosecution failed to disclose a "lab report, police report's [*sic*], [and] arrest reports."  This claim is essentially a restatement of the Brady and newly discovered evidence claims raised in Petitioner's § 330 motion and discussed above.  For the reasons outlined *supra*, this Court finds that Petitioner is not entitled to habeas relief.  The evidence at issue was of limited probative

23

value and Petitioner has not established that it the introduction of the evidence would likely have changed the outcome of the trial, as is required to establish a <u>Brady</u> violation. <u>See</u> <u>Atkinson v. Portuondo</u>,  269 F. Supp.2d 57, 62 (E.D.N.Y. 2003); <u>Montgomery v. Artuz</u>, 26 F. Supp.2d 497, 503 (W.D.N.Y. 1998); <u>Perkins v. Bennett</u>, 97-CV-5917, 2003 WL 21696946, at *2 (E.D.N.Y. June 18, 2003).

As such,  this Court finds that Petitioner is not entitled to habeas relief based upon an alleged <u>Brady</u> violation.

## IV. CONCLUSION

For the reasons stated above, the Court recommends William Morris' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

DATED:      August 13, 2007

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

24

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

August 13, 2007

Victor E. Bianchini
United States Magistrate Judge